# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW GAHAGAN | : | |
| | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 21-2523 |
| CITY OF PHILADELPHIA, et al. | : | |
| | : | |
|     Defendants. | : | |

## MEMORANDUM OPINION

**Goldberg, J.**                                                                                         **November 7, 2022**

On the evening of October 14, 2020, while walking by a homeless encampment that had been set up near 22nd and Benjamin Franklin Parkway in Philadelphia, Plaintiff Andrew Gahagan was allegedly assaulted by several of the encampment's residents. He called 9-1-1, but when police arrived, he was arrested by Officer Richard Cujdik of the Philadelphia Police Department and subsequently charged with aggravated assault. Following dismissal of the charges against him, Plaintiff brought suit against Defendants Officer Cujdik and the City of Philadelphia ("Defendants"), setting forth claims under 42 U.S.C. § 1983 and state law for false arrest, malicious prosecution, and intentional infliction of emotional distress.

Defendants now move for summary judgment on all claims. For the following reasons, I will grant the Motion and enter judgment in favor of Defendants on the entirety of the Complaint.

I.  **FACTUAL BACKGROUND**

The following facts are taken from the parties' statements of fact and accompanying evidence.[1]

A. **Police Dispatch Recordings**

A reproduction of the police dispatch calls from October 14, 2020, during the relevant time period of 5:40 p.m. to 6:20 p.m. reveals the following:

- At 5:42 p.m., a woman calls about an altercation in front of the homeless encampment that had been set up in the summer of 2020 near 22nd and the Parkway.  She reports that one of the residents of the encampment, a black male in a brown jacket, was yelling at a white male with a large camera who was recording the encampment.  The black male then struck the white male in the face.

- Less than one minute later, a man calls to report that he had just been attacked by four people from the homeless encampment near 22nd and the Parkway.  He states that there were no weapons, but he had been hit in the face three times.

- At 5:44 p.m., police and dispatch discuss a report of a "person screaming," "male being assaulted," "black male, brown jacket."

- At 5:48 p.m., an officer and dispatch each state "person screaming, slow it down."

- At 5:49 p.m., police discuss a "complainant" at 22nd and the Parkway.

- At 5:54 p.m., an officer reports to dispatch a "simple assault."

- At 6:00 p.m., officers and dispatch exchange some random police codes.

- At 6:01 p.m., a male calls in to report that he was walking by the homeless encampment when someone started throwing stuff and screaming at him.  He asks that dispatch send officers right away because there was still "screaming and yelling."

- At 6:07 p.m., a male calls in stating that he had called ten minutes earlier about being assaulted at 22nd and the Parkway.  Dispatch told him that officers were there, but he said he did not see anyone.  He states, "I don't need an ambulance, but I need police."

---

[1]  The facts are undisputed unless otherwise noted.  To the extent the parties present different versions of the relevant events, both versions are set forth in full with all facts being taken in the light most favorable to Plaintiff as the non-moving party.

- At 6:12 p.m., an officer comes on the radio to ask about the assault on 22nd and the Parkway. Dispatch indicates that other officers have responded.

- At 6:14 p.m., an officer on the scene calls to ask that dispatch "send a couple of units. I've got a fight about to break out."

- At 6:20 p.m., one officer reports that an arrest was made, he has two complainants in the back of his car, and is bringing them to the station.

(Pl.'s Ex. 1, Recording of Police Dispatch Calls from October 14, 2020.)

B. **Defendant Officer Cujdik's Testimony**

On October 14, 2020, Officer Cujdik of the Philadelphia Police Department was working the 4:00 p.m. to 12:00 a.m. tour of duty in full uniform. (Defs.' Statement of Undisputed Material Facts ("DSUF") ¶ 1; Plaintiff's Response to Defendants' Statement ("PR") ¶ 1.) The following recitation of events is set forth in Officer Cujdik's deposition testimony and the Police Investigation Interview Record of the two complainants.

Officer Cujdik testified that he received a call regarding a male armed with mace at 22nd and Benjamin Franklin Parkway. (Defs.' Ex. A, Dep. of Richard Cujdik ("Cujdik Dep.") 11:6–10; Ex. B.) When he arrived at the scene of 22nd and the Parkway two minutes later, two black men flagged him down. (Cujdik 12:4–14; Defs.' Ex. B.) The complainants, Puton McKoy and Jermaine Mazor, told Officer Cujdik that they were maced in the mouth and face. (Cujdik Dep. 13:7–12; Defs.' Ex. B.) Officer Cujdik observed that they had redness in their eyes and were coughing. (Cujdik Dep. 23:19–24.) Mr. McKoy and Mr. Mazor immediately identified Plaintiff, who was still at the scene, as the man who had maced them. (DSUF ¶ 6; PR ¶ 6.)

Officer Cujdik approached Plaintiff, who was standing not more than twenty feet away with mace in his hand. The officer took the mace from Plaintiff and placed him under arrest. (Cujdik Dep. 16:7–23.) Officer Cujdik transported Plaintiff to the 9th District for processing. (DSUF ¶ 9; PR ¶ 9.) At the 9th District, Officer Cujdik completed his paperwork, including an arrest memo, to

3

be handed in to detectives. (DSUF ¶ 10; PR ¶ 10.) He did not make any recommendation regarding Plaintiff's charges, as detectives make that determination. (Cujdik Dep. 22:3–7.)

### C. **Plaintiff's Testimony**

Plaintiff's version of the events offers additional details regarding what occurred.

Prior to being arrested, Plaintiff contends that he was walking down the Benjamin Franklin Parkway when he heard screaming coming from the homeless encampment set up nearby. (Defs.' Ex. G, Dep. of Andrew Gahagan ("Gahagan Dep.") 10:15–18.) He saw two men coming towards him and yelling about taking photographs. (Id. at 10:18–20.) One of the men picked up a rock and threw it at Plaintiff. The same man then picked up another item that seemed to be a container with liquid and threw it at Plaintiff. The item hit him in the leg so hard that the bottle exploded. (Id. at 14:1–7.)

Plaintiff then took the can of pepper spray he was carrying in his pocket, warned the two men about the pepper spray, and directed them to stop their aggression. (Id. at 14:11–14.) One of the men began to scream even louder and charged at Plaintiff. (Id. at 14:14–17.) Plaintiff then sprayed the pepper spray in the men's direction, but did not believe he was close enough to make contact with the individuals. (Id. at 20:12–24.)

After deploying the pepper spray, Plaintiff ran to the area in front of the Barnes and Rodin Museum, where he called 9-1-1 to report being assaulted. (Id. at 21:23–22:15; Pl.'s Ex. 1, Radio Call at 18:01:36.) Plaintiff told the operator he had just been assaulted by people from the encampment and described his location, and the operator stated that police would be sent out. (Id. at 22:21–25:2.) Plaintiff waited approximately ten minutes. When no police arrived, he made a second 9-1-1 call, advising that he had already called for police assistance, that he had been assaulted by people from the encampment, and that he was still waiting for police. (Id. at 24:14–25:2.)

4

At some point, Plaintiff saw a police car coming down the street and flagged that police car down. He explained to the officer that he had been assaulted by two men in the encampment. (Id. at 25:14–20.) At that point, two to three females from the encampment came walking down to the police car and started telling the police officer that Plaintiff had assaulted some of the encampment's residents. (Id. at 27:1–5.)

As he was talking to the officer, the two men who had assaulted Plaintiff also approached the car. Plaintiff told the officer, "These are the men that assaulted me, I need help, please get out of the car and help me, they are coming out again." One of the men then threw another object at Plaintiff across the trunk of the police car. (Id. at 28:21–30:9.) The officer got out of his car, and eventually, there were approximately four police cars and a bicycle policeman on the scene. (Id. at 31:8–12.) One of the officers asked Plaintiff if he had pepper spray, and Plaintiff said "yes." The officer then asked Plaintiff to give it to him, and Plaintiff complied. (Id. at 33:2–4.) While Plaintiff was standing there, Plaintiff heard the man who had assaulted him screaming at a police officer, "If this were one of us, we would have been locked up long ago." At that point, the officer in the white shirt said to the officer next to Plaintiff "cuff him." That officer complied, handcuffed Plaintiff, and put him in the car. (Id. at 35:6–13.)

Before the cuffs were on Plaintiff, Plaintiff explained what had happened, that he had called 9-1-1, that he had been assaulted by the two men, and that he had been waiting for help from the police. (Id. at 35:14–17.) Plaintiff was told he was being taken to the police station for an interview. The same officer that drove Plaintiff to the police station was also the same one that handcuffed him. (Id. at 37:11–12, 38:7–10.) Plaintiff was detained at the police station for approximately eighteen hours. (Id. at 40:18–20.)

### D. Undisputed Events Following Plaintiff's Arrest

At the police station, Philadelphia Detectives Campbell and Koenig interviewed the complainants from the encampment, Mr. McKoy and Mr. Mazor. (DSUF ¶ 12; PR ¶ 12.) Plaintiff was then charged with aggravated assault, possession of an instrument of crime, simple assault, and recklessly endangering another person. (DSUF ¶ 13; PR ¶ 13.) The men who accused Plaintiff refused medical treatment. (Pl.'s Ex. 5.)

On March 2, 2021, the Commonwealth requested a continuance in Plaintiff's criminal case because "victim/witness failed to appear." (DSUF ¶ 14; PR ¶ 14.) On March 25, 2021, the charges against Plaintiff were dismissed due to lack of prosecution. (DSUF ¶ 15; PR ¶ 15.) Plaintiff testified that because no one showed up at the second hearing, his lawyer petitioned to have the case dismissed, and the judge agreed. (Gahagan Dep. 43:1–3.) It was Plaintiff's understanding that the charges were dropped because the individuals did not appear at the hearing. (Id. at 43:11–16.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 states, in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). "Through summary adjudication, the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." Capitol Presort Servs., LLC v. XL Health Corp., 175 F. Supp. 3d 430, 433 (M.D. Pa. 2016). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue

is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id.

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine, triable issues. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine issue in rebuttal. Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015). The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana v. Kmart Corp, 260 F.3d 228, 232 (3d Cir. 2001). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Twp. of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

## III. DISCUSSION

As set forth above, Plaintiff alleges claims under § 1983 and state law against Officer Cujdik, and under § 1983 against the City of Philadelphia. Defendants contend that Plaintiff has failed to substantiate any of his claims.

### A. Section 1983 Claims Against Officer Cujdik

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. The statute itself does not independently create substantive rights, but rather merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." Kopec v. Tate, 361 F.3d 772, 775–76 (3d Cir. 2004); see also Gonzaga Univ. v. Doe,

536 U.S. 273, 284–85 (2002); Bush v. Lancaster City Bureau of Police, No. 07–cv-3172, 2008 WL 3930290, at *3 (E.D. Pa. Aug. 26, 2008).

Here, Plaintiff alleges that Officer Cujdik, while acting under color of law and under his apparent authority for the City of Philadelphia, deprived Plaintiff his rights under the Fourth Amendment to be free from false arrest and malicious prosecution.

1. False Arrest

The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, Ker v. Calif., 374 U.S. 23, 30 (1963), provides in pertinent part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const., amend. IV. In order to establish a claim under the Fourth Amendment, a plaintiff must show that the actions of the defendant: (1) constituted a "search" or "seizure" within the meaning of the Fourth Amendment, and (2) were "unreasonable" in light of the surrounding circumstances. Parker v. Wilson, No. 98-cv-3531, 2000 WL 709484, at *3 (E.D. Pa. May 30, 2000) (citing Brower v. County of Inyo, 489 U.S. 593, 595 (1989)). The Fourth Amendment precludes a police officer from arresting and incarcerating a citizen except upon probable cause. See Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) (stating that "an arrest based on probable cause could not become the source of a [§ 1983] claim for false imprisonment."); Nimley v. Baerwald, No. 02-cv-7417, 2004 WL 1171733, at *7 (E.D. Pa. May 26, 2004) (stating that, in a § 1983 action, the key element of a cause of action for unlawful arrest is that the law enforcement agent arrested the plaintiff without probable cause).

The United States Supreme Court has characterized probable cause as a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). A showing of probable cause thus requires "proof of facts and circumstances that would convince a reasonable,

honest individual that the suspected person is guilty of a criminal offense." Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993). Although probable cause calls for more than mere suspicion, it does not mandate that the evidence at the time of the arrest be sufficient to prove guilt beyond a reasonable doubt. Nimley, 2004 WL 1171733, at *7 (citing Warlick v. Cross, 969 F.2d 303, 306 (7th Cir. 1992); Orsatti v. N.J. State Police, 71 F.3d 480, 482–83 (3d Cir. 1995)). Indeed, the ultimate finding of guilt or innocence, or even dismissal of charges arising out of an arrest and detention has no bearing on whether the arrest was valid. Pansy v. Preate, 870 F. Supp. 612, 617–18 (M.D. Pa. 1994) (citing Pierson v. Ray, 386 U.S. 547, 555 (1967)), aff'd, 61 F.3d 896 (3d Cir. 1995). In appropriate cases, a court may conclude that probable cause existed as a matter of law if the evidence, viewed most favorably to the plaintiff, reasonably would not support a contrary factual finding. See Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997).

The probable cause test is an objective one based on the facts available to the officers "at the moment of arrest," rather than in hindsight. Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994). As long as officers had some reasonable basis to believe that an individual committed a crime, the arrest is justified as being based on probable cause. Id. "Probable cause need only exist as to *any offense* that could be charged under the circumstances." Id. (emphasis added).

In the factually-analogous case of Berrios v. City of Philadelphia, 96 F. Supp. 3d 523 (E.D. Pa. 2015), the plaintiff told his neighbor that he was having a disagreement with his boyfriend and asked the neighbor to call the police. Id. at 528. The police responded to the plaintiff's residence, where they observed a shattered fish tank, broken furniture, and other disarray. Id. at 529. Police first spoke with the boyfriend, who told officers that the plaintiff had hit him in the face with an iron. Id. Officers then encountered the plaintiff, who reported he had, in fact, hit his boyfriend in the face with an iron but did so in self-defense. Id. Many of the facts regarding subsequent events were disputed, but it was agreed that plaintiff was handcuffed, arrested, and charged with possessing

9

an instrument of crime, simple assault, and recklessly endangering another.  Id. at 529–30.  Subsequently, all charges were withdrawn.  Id. at 530.  Plaintiff sued the officers for false arrest and false imprisonment.  Id.

The court granted summary judgment in favor of the officers, finding that probable cause existed.  Id. at 531–32.  The court noted that the plaintiff was charged with simple assault under Pennsylvania law, which occurs when a person "attempts to cause or intentionally, knowingly, or recklessly causes bodily injury to another."  Id. at 532.  (quoting 18 Pa. Cons. Stat. § 2701).  As Plaintiff admitted to hitting his boyfriend with an iron, the court found that probable cause had been established.  At that point, the officers were not required to investigate whether the plaintiff was a victim acting in self-defense, even if true and subjectively believed by the arresting officers.  Id.

Likewise here, the evidence, viewed in the light most favorable to Plaintiff, reveals the existence of probable cause.  Although the parties disagree as to whether Officer Cujdik ever received a call specifically reporting a male "armed with mace" at 22nd and Benjamin Franklin Parkway, there is no dispute that calls to police were made regarding some disturbance among individuals that was occurring at that location.  When Officer Cujdik arrived at the location, two men, McKoy and Mazor, told police that they were maced in the mouth and face by Plaintiff.  Officer Cujdik observed that the men had redness in their eyes and were coughing.  McKoy and Mazor then immediately identified Plaintiff as the perpetrator.  Officer Cujdik approached Plaintiff, who was nearby and admittedly had mace in his hand.  The officer took the mace from Plaintiff and placed him under arrest.  Based on these undisputed facts, Officer Cujdik had probable cause to believe that Plaintiff had committed simple assault by "attempt[ing] to cause or intentionally, knowingly, or recklessly caus[ing] bodily injury to another."  18 Pa. Cons. Stat. § 2701.

Plaintiff contends that Officer Cujdik failed to ask Plaintiff for his version of what happened, did not attempt to find any other witnesses, and did not speak with anyone else on the scene.  He

10

goes on to argue that had Officer Cujdik asked Plaintiff for his version of the events, he could have then confirmed, from the mobile data terminal in his police car, that Plaintiff had called 9-1-1 to report an assault. He would have then recognized that Plaintiff acted in self-defense. Because Officer Cujdik "ignored facts that were easily available to him," Plaintiff contends that no probable cause exists. (Pl.'s Opp'n Summ. J. 9.)

Probable cause, however, does not require a showing that Plaintiff was actually guilty beyond a reasonable doubt of assaulting the two men at the time he was arrested. See Wright v. City of Philadelphia, 409 F.3d 595, 601–02 (3d Cir. 2005) ("Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction.") (quotation omitted). Nor does probable cause require police to investigate all of the circumstances regarding the incident, correctly resolve conflicting evidence, or make accurate determinations of credibility. Id. at 603. Rather, once Officer Cujdik had probable cause in the form of the complainants' identification of Plaintiff as the assaulter, Plaintiff's presence at the scene, and Plaintiff's possession of mace, an "exculpatory defense, no matter how compelling, could not defeat . . . [that] probable cause." Davis v. Malitzki, 451 F. App'x 228, 234 (3d Cir. 2011); see also Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 790 n.8 (3d Cir. 2000) (probable cause not defeated by failure to interview suspect before arrest). Accordingly, I will grant summary judgment in favor of Defendants on this claim.

### 2. Malicious Prosecution

To establish a malicious prosecution claim under § 1983, a plaintiff must prove that: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding." Johnson

11

v. Knorr, 477 F.3d 75, 81–82 (3d Cir. 2007).  To prevail, a plaintiff must satisfy each of these enumerated elements.  Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009).

Defendants challenge Plaintiff's malicious prosecution claim on two grounds.

First, they contend that Plaintiff has not set forth any facts to indicate that Officer Cujdik initiated the criminal proceedings against him.  Generally, the prosecutor, not the police officer, initiates a proceeding against a defendant.  Henderson v. City of Philadelphia, 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012).  An officer may "be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion."  Id. (quotations omitted).

Plaintiff contends that Officer Cujdik (a) falsely stated that he received a call over police radio for a "person with a weapon, male, armed with mace at 22nd and Benjamin Franklin Parkway," even though there was no such call; (b) stated on the police report that he received a radio call for an "Agg Assault," and (c) knew when he took Plaintiff to the police station that Plaintiff was going to be charged with a crime.  These allegations taken as true, however, allow no such finding that Officer Cujdik "initiated" any proceedings.  The Incident Report prepared by the officer simply stated:

> R/C [radio call] Agg Assault
> Compl. states as he was having a conversation with a male, offender walked up and maced him and witness.  Off. stopped and arrested on [l]oc[ation].  Mace recovered from offender's righthand.

(Pl.'s Ex. 2.)  Even assuming that the comment about an "R/C Agg Assault" was false, the report otherwise reported the precise, undisputed facts on which the aggravated assault was based: the complainant (whether on a call or at the scene) reported being maced by Plaintiff, and Plaintiff was arrested at the scene with mace in his hand.  Such facts do not allow any reasonable inference that

12

Officer Cujdik interfered with the prosecutor's informed discretion or otherwise encouraged the prosecutor to file charges.[2]

Second, Defendants argue that even if Officer Cujdik could be deemed to have initiated the proceeding, Plaintiff has not created any genuine issue of material fact on the element of favorable termination. The Third Circuit has noted that while "a grant of nolle prosequi can be sufficient to satisfy the favorable termination requirement for malicious prosecution, not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably." DiFronzo v. Chiovero, 406 F. App'x 605, 609 (3d Cir. 2011) (quotations omitted). "A nol pros signifies termination of charges in favor of the accused only when their final disposition is such as to indicate the innocence of the accused." Id. (internal quotations omitted). "If a dismissal pursuant to a *nolle prossed* charge 'does not suggest that [a plaintiff] was innocent of the remaining criminal charges,' it will not be sufficient to satisfy the favorable termination rule." Williams v. Scranton Police Dept., No. 14-950, 2015 WL 10567873, at *8 (M.D. Pa. Nov. 25, 2015) (citing Donahue v. Gavin, 280 F.3d 371, 384 (3d Cir. 2002)).

Here, according to undisputed facts, the Commonwealth requested a continuance in the case against Plaintiff because "victim/witness failed to appear." (DSUF ¶ 14; PR ¶ 14.) On March 25, 2021, the charges against Plaintiff were dismissed due to lack of prosecution. (DSUF ¶ 15; PR ¶ 15.) Plaintiff confirmed that the case was *nolle prossed* because no one showed up at the second

---

[2] In his Response to the Motion for Summary Judgment, Plaintiff brings a new, stand-alone Fourteenth Amendment claim for "fabrication of evidence." This claim fails for two reasons. First, Plaintiff never pled this claim anywhere in his Complaint and cannot belatedly assert it now in opposition to a summary judgment motion. Second, the fabrication of evidence claim—as set forth by the Third Circuit in Halsey v. Pfeiffer, 750 F.3d 273 (3d Cir. 2014) and Black v. Montgomery County, 835 F.3d 358, 370 (3d Cir. 2016) —exists where an individual has had fabricated evidence used against him at a trial. Here, the charges against Plaintiff were *nolle prossed*, meaning there was no trial at which fabricated evidence could have been used.

hearing and his lawyer petitioned to have the case dismissed. (Gahagan Dep. 43:1–16.) Nothing in the record signifies that Plaintiff was innocent of the criminal charges. As such, Plaintiff cannot establish that the dismissal of the charges constitutes a favorable termination.[3]

### B. State Law Claims Against Officer Cujdik

Plaintiff also brings state law claims against Officer Cujdik for false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress. Defendants seek summary judgment on all of these claims.

#### 1. False Arrest and False Imprisonment

Plaintiff's state law claim for false arrest is duplicative of his false imprisonment claim, as they "are essentially the same actions." Dixon v. Schweizer, No. 18-cv-5403, 2020 WL 4600187, at *7 (E.D. Pa. Aug. 11, 2020) (internal quotation marks omitted) (quoting Watson v. Witmer, 183 F. Supp. 3d 607, 617 (M.D. Pa. 2016) (further quotations omitted)). Courts have determined that "a false arrest is an alternative means of establishing liability for false imprisonment but is not itself a tort in the sense of being an independent source of liability." Id. (internal quotation marks omitted); see also Osgood v. Borough of Shamokin Dam, 420 A.2d 613, 614 (Pa. Super. Ct. 1980) (explaining that "false arrest" is "synonymous with false imprisonment where a defendant purports to act for the purpose of securing the administration of the law without actual legal justification").

Under Pennsylvania law, a false imprisonment is defined as (1) an arrest made without probable cause or (2) an arrest made by a person without privilege to do so. Kokinda v. Breiner, 557 F. Supp. 2d 581, 593 (M.D. Pa. 2008). A false arrest claim against a police officer turns on the existence or nonexistence of probable cause. Id. Therefore, an arrest is lawful if based on probable cause, regardless of whether the individual arrested was guilty or not. Renk v. City of Pittsburgh,

---

[3] Officer Cujdik also contends that he is entitled to qualified immunity on the § 1983 claims against him. As I dismiss these claims on other grounds, I need not address this argument.

641 A.2d 289, 293 (Pa. 1994). In assessing probable cause, "[t]he Pennsylvania and federal standards regarding the existence of probable cause are the same." DeBellis v. Kulp, 166 F. Supp. 2d 255, 280 (E.D. Pa. 2001).

As set forth above in connection with the § 1983 false arrest claim, I find that the undisputed evidence of record establishes that Officer Cujdik had probable cause to arrest Plaintiff for some crime. For the same reasons, I will dismiss the state law false arrest and false imprisonment claims.

2. Malicious Prosecution

A common law claim for malicious prosecution almost precisely mirrors the elements of a § 1983 malicious prosecution claim and requires the plaintiff to demonstrate that the defendant "(1) instituted proceedings against the plaintiff, (2) without probable cause, (3) with malice, and (4) that the proceedings were terminated in [the plaintiff's] favor." Rosembert v. Borough of East Lansdowne, 14 F. Supp. 3d 631, 644–45 (E.D. Pa. 2014) (quotations omitted). The state law tort does not have the fifth element required under § 1983.

As I found with respect to the § 1983 claim, Plaintiff has failed to show either that Officer Cujdik initiated the proceedings or that the proceedings were terminated in his favor. Accordingly, I will grant summary judgment in Defendants' favor on this claim.

3. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress under Pennsylvania law, a plaintiff must allege that (1) the defendant engaged in "extreme and outrageous" conduct, (2) the "conduct caused [the plaintiff] severe emotional distress," and (3) the defendant "acted intending to cause such distress or with knowledge that such distress was substantially certain to occur." Brown v. Muhlenberg Twp., 269 F.3d 205, 218 (3d Cir. 2001). Courts have defined "extreme and outrageous" quite narrowly, finding that the conduct must "go beyond all possible bounds of

15

decency, and [] be regarded as atrocious, and utterly intolerable in a civilized community." Reedy v. Evanson, 615 F.3d 197, 231–32 (3d Cir. 2010) (quoting Field v. Philadelphia Elec. Co., 565 A.2d 1170, 1184 (Pa. Super. 1989)).  "Claims of intentional infliction of emotional distress rarely succeed" because of the high standard of proof.  Olender v. Twp. of Bensalem, 32 F. Supp. 2d 775, 792 (E.D. Pa. 1999).

Courts that have upheld claims for intentional infliction of emotional distress in connection with an arrest have done so where the plaintiff was physically injured by the officers, or where the officer's conduct was otherwise exceptionally reprehensible.  See Shaffer v. City of Pittsburgh, No. 14-cv-1674, 2015 WL 4878497, at *10 (W.D. Pa. Aug. 14, 2015) (citing cases).  Where, however, a plaintiff alleges intentional infliction of emotional distress simply in connection with an allegedly false arrest and/or prosecution, and where the court finds that the arresting officer had probable cause, a claim of intentional infliction of emotional distress cannot succeed.  See, e.g., Shaffer, 2015 WL 4878497, at *10 ("[B]ecause Defendants had probable cause to arrest Plaintiff, their conduct falls far short of extreme and outrageous behavior."); Dintino v. Echols, 243 F. Supp. 2d 255, 267–68 (E.D. Pa. 2003) (dismissing intentional infliction of emotional distress claim where officer had probable cause to arrest civilian employee of police department for fraudulent receipt of overtime wages, even though employee was found not guilty of the charges against her).

As set forth above, Officer Cujdik had probable cause for Plaintiff's arrest on some form of assault.  Plaintiff alleges no use of force, no physical injury, and no excessive detention.  Accordingly, Plaintiff cannot succeed on his claim of intentional infliction of emotional distress.

### C. *Monell* Claim Against Defendant City of Philadelphia

Plaintiff's last remaining claim is a § 1983 cause of action against Defendant City of Philadelphia.  The standard for alleging such claims against a municipality, however, is different than against an individual defendant.  In order to recover against a municipality or municipal

corporation under § 1983, a plaintiff must plead that the City itself caused an injury through the implementation of a policy, practice or custom.  Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978); Natale v. Camden Cty Corr. Facility, 318 F.3d 575 (3d Cir. 2003).  Section 1983 imposes liability on a municipality where, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997) (emphasis in original). The Third Circuit has recognized liability for local governments in three circumstances:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; . . . second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; . . . third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes.

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (internal citations omitted).

A plaintiff must prove that the action in question, conducted pursuant to official municipal policy, caused his/her injury.  Connick v. Thompson, 563 U.S. 51, 60–61 (2011). When a plaintiff alleges that a policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d Cir. 2014) (citations omitted).  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 61 (citations omitted).

Notably, "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell, 436 U.S. at 691. Thus, in the absence of an underlying violation by the individual state actors, Monell liability cannot

stand. Grazier v. City of Phila., 328 F.3d 120, 124 (3d Cir. 2003) (disallowing liability on a failure to train theory where a jury determined that the underlying conduct did not violate a plaintiff's constitutional rights); Clayworth v. Luzerne Cnty, No. 11-cv-254, 2011 WL 6055407, at *7 (M.D. Pa. Dec. 6, 2011) (holding that in the absence of an underlying violation by the individual state actors, Monell liability cannot stand), aff'd, 513 F. App'x 134 (3d Cir. 2013).

Here, Plaintiff seeks to hold Defendant City of Philadelphia liable under a Monell theory for all of the acts committed by Officer Cujdik. As set forth in detail above, however, Defendants are entitled to summary judgment on all of the claims against Officer Cujdik. Absent an underlying violation by the individual actor, Monell liability cannot stand against the City of Philadelphia.

## IV. CONCLUSION

In light of foregoing, I will grant summary judgment in favor of Defendants and against Plaintiff on all of the claims in the Complaint. An appropriate Order follows.